**WILCOX v. UNITED STATES et al.**
**SULLIVAN v. SAME.**

District Court, S. D. New York.
March 13, 1940.

Silas B. Axtell, of New York City, for libellants.

John T. Cahill, U. S. Atty., and Tompkins, Boal & Tompkins, all of New York City (Arthur M. Boal, of New York City, of counsel), for respondent.

COXE, District Judge.

These are suits by two members of the crew of the S. S. "Quaker City" to recover for injuries sustained as a result of assaults committed by two other members of the crew of the same vessel. The assaults took place on May 11, 1937, as the vessel was leaving the port of Hull, England. The libels allege that the two men who committed the assaults were vicious characters, and that the master was negligent in permitting them to remain at large.

The "Quaker City" was owned and operated by the United States, and engaged in carrying cargo to European ports. The two libellants, Wilcox and Sullivan, were regular members of the crew of the vessel, Wilcox having joined at Boston, and Sullivan at Cork. The two men who committed the assaults, Byrne and Collins, were also regular members of the crew, and neither of them had previously been in trouble on the vessel.

The vessel arrived at Hull on May 10th, and was due to leave there in the late afternoon or early evening of May 11th. The log shows that the loading of the hatches was finished at 3:30 P. M. on May 11th. There was, however, some work to be done after that preparing the vessel for sea; yet most of the crew, mainly at the instigation of Byrne and Collins, spent practically all of the remainder of the afternoon discussing whether they would hold the vessel at Hull in order that the men might have a week-end holiday.

Wilcox and Sullivan testified that they came on deck at about 3:30 P. M. and were helping to make the vessel ready for sailing when they were told by Byrne and Collins to come to the messroom where the members of the crew were assembled. Wilcox says he went there out of curiosity, Sullivan because he was threatened. There is no testimony, however, that anyone was threatened in the messroom; the entire time there was taken up by Byrne and Collins in trying to persuade the others to refuse to sail so that all could have a week-end holiday. Byrne and Collins had been drinking, but the evidence is clear that they were not drunk.

Wilcox and Sullivan further testified that two of the mates looked into the messroom at different times and listened to the discussion there for brief intervals. They also said that Captain Dahl came down three or four times and pleaded with the men "to get the ship going". Captain Dahl denied, however, that he was in the messroom at any time except on one occasion when he talked with the men just before the vessel sailed. He said that he first learned of the attitude of the crew at about 6 P. M. when Larson, the first mate, told him that the crew refused to sail; he then went immediately to the messroom and asked each man separately if he was "going to sail", and received affirmative responses from all except Byrne and Collins.

After the talk with the captain, all of the crew, with the exception of Byrne and Collins, proceeded at once to their stations. Wilcox said that before the men left the messroom Captain Dahl told them that he would "guarantee" their safety. Sullivan gave similar testimony. Captain Dahl denied that any statements of that kind were made to the men.

Wilcox went forward with Larson, the first mate, to help with the lines; while engaged there he was struck without warning by Byrne in the back, head and face. Byrne was then seized by Larson and taken below. Sullivan was working aft when Collins appeared and made threatening remarks. Sullivan says that he and another member of the crew named Campbell dropped their work and ran to the recreation room where they were followed by Byrne and Collins. Sullivan was kicked in the groin by Byrne.

The assaults occurred as the vessel was pulling away from the dock. When the locks were passed, Captain Dahl placed Byrne and Collins in irons, where they remained until after the vessel reached Hamburg. At Hamburg, Captain Dahl requested the American consul to take both men

off the vessel. This request was refused, and Captain Dahl was told to talk the matter over with Byrne and Collins. This was done, and when both men promised to cause no further trouble they were released. They remained as members of the crew on the voyage back to the United States, and were in no more trouble.

Wilcox stood his regular watches on the run to Hamburg; he also worked steadily on the voyage back to the United States. He was examined by a physician at Hamburg, and told that he might continue with his duties. When the vessel reached New York, he went to the Marine Hospital once but never returned. The medical testimony is clear that he sustained no permanent injury. Sullivan received first aid on the vessel, and had a medical examination by a physician at Hamburg. He was advised there that he was able to work but "to take it easy". He did work continuously on the voyage back to the United States. He now has a slight tenderness in the right groin indicating a potential hernia, and wears a truss.

 Was the master negligent in allowing Byrne and Collins to remain at large? That is the only issue in the case, and the answer depends on whether the master should reasonably have anticipated that Byrne and Collins would inflict bodily injury on any of the crew. Byrne and Collins had done nothing previously to indicate that they were vicious characters. They had concededly been drinking, but were not drunk, and knew fully what they were about. There is no evidence, either, that during the discussion in the messroom they made any threats against other members of the crew.

The whole action of the crew in seeking to control the authority of the master was, of course, utterly indefensible, but when the master put the question to each man separately whether he was going to sail, and all gave affirmative answers except Byrne and Collins, I think the master was reasonably justified in assuming that the incident was closed. There was nothing to suggest that Byrne and Collins would in their resentment commit assaults on members of the crew who had submitted to the master's orders.

After the assaults the master took prompt action, and Byrne and Collins were placed in irons where they remained until their release at Hamburg. They were in no further trouble on the voyage back to the United States.

The libellants lay considerable stress on the testimony that the master said he would "guarantee" the safety of the men, and "protect" them in their work. The master denied that he made any such statement, and I am inclined to accept his testimony. But even if these statements were made, I do not believe that they are sufficient to charge the master with knowledge that Byrne and Collins were vicious characters who should have been restrained. I think, therefore, that on the whole case the charge of negligence has not been proved.

There is nothing in the record to justify an award for maintenance and cure. Both libellants stood their regular watches on the way back to the United States, and received their full wages to the end of the voyage. They were given medical assistance at the Marine Hospital in New York, but neglected to continue with the treatments there. Under these circumstances, I can find no basis for a claim for maintenance and cure.

The libels in both actions are dismissed, but without costs.