**PERMANENTE STEAMSHIP CORPO-RATION, a corporation, Appellant,**

v.

**Juan A. G. MARTINEZ, Appellee.**

**No. 20242.**

United States Court of Appeals
Ninth Circuit.

Dec. 1, 1966.

George L. Dyer, Jr., George W. Ashford, Jr., of Anderson, Wrenn & Jenks, Honolulu, Hawaii, for appellant.

Robert A. Franklin, Honolulu, Hawaii, S. Eldridge Sampliner, Cleveland, Ohio, Arthur Roth, Miami, Fla., for appellee.

Before POPE, MERRILL, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

On July 24, 1957, Juan A. G. Martinez was injured in an accident while serving as a seaman aboard appellant's vessel, the S.S. Permanente Silverbow. On August 5, 1959, he filed an action for damages resulting from unseaworthiness and negligence, and for maintenance and cure. His damage claim was rejected by the jury, and he did not appeal. He was allowed maintenance and cure by the trial court.[1] The shipowner appealed. We affirm.

The district court found that the seaman suffered from a mental illness caused by head injuries sustained in the accident; that he became disabled as a result of this condition in December 1961; and that he reached maximum possible medical recovery by December 31, 1963. The court awarded maintenance and cure from December 1961 through December 1963, except for periods in which the seaman was hospitalized at no cost to himself.

I

The shipowner contends that its obligation to provide maintenance and cure terminated as a matter of law when the seaman voluntarily resumed his maritime employment aboard another vessel subsequent to the accident.[2]

A vessel's obligation to furnish maintenance and cure to a seaman who is injured or taken ill during his service continues until the seaman achieves maximum recovery; that is, until the seaman is well or his condition is found to be in-

---

1. The parties stipulated that the claim for maintenance and cure would be reserved for decision by the trial judge.

2. Appellee continued to perform his duties aboard the S.S. Permanente Silverbow until December 12, 1957. His subsequent employment record was as follows:

| | | |
|---|---|---|
| 1958 | S.S. Hawaiian Rancher | 4 months |
| | S.S. President Jefferson | 3 months |
| | S.S P & T Explorer | 3½ months |
| 1959 | S.S. Filmore | 3 months |
| | S.S. Hawaiian Trader | 3 months |
| 1960 | S.S. Matsonia | 2½ months |
| | S.S. Coast Progress | 3½–4 months |
| | Ship chartered by Matson | 4 months |
| | S.S. Monterey | 1 month (December) |
| 1961 | S.S. Monterey | 1 month (January) |

curable.[3] And we think it is the better view that employment aboard another vessel (or the issuance of a United States Public Health Service certificate of fitness), although evidence of the fact that the seaman had fully recovered, is not conclusive. There is ample authority holding that if the seaman can establish that he had not in fact fully recovered, his return to work does not terminate his right to maintenance and cure from the vessel in whose service he was injured or became ill.[4]

Appellant contends that in some of these cases the seaman's return to work was not voluntary, but was compelled by the refusal of the vessel to furnish maintenance and cure; while in others the subsequent employment did not consist of seaman's work. We agree that these factors may affect the weight which the seaman's return to work should be given in determining when the point of maximum recovery was attained. They may also be relevant for other purposes, as illustrated by Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). But they do not, in our opinion, detract from the holding of the cited cases that a seaman's return to employment does not invariably and as a matter of law terminate the maintenance and cure obligation of the prior maritime employer.

Appellant relies heavily upon Inter Ocean S.S. Co. v. Behrendsen, 128 F.2d 506 (6th Cir. 1942). We read that opinion as ruling that in the particular case the seaman had in fact fully recovered when he resumed work. We do not find in Inter Ocean or in any of the district court decisions cited by appellant[5] any authority for the suggested rule that, as a matter of law, subsequent re-employment terminates the right to maintenance and cure.[6]

3. Vaughan v. Atkinson, 369 U.S. 527, 531–534, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Farrell v. United States, 336 U.S. 511, 515–518, 69 S.Ct. 707, 93 L.Ed. 850 (1949); Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528–530, 58 S.Ct. 651, 82 L.Ed. 993 (1938).

4. Wilson v. United States, 229 F.2d 277, 280 (2d Cir. 1956); Yates v. Dann, 223 F.2d 64, 67 (3d Cir. 1955); Luth v. Palmer Shipping Corp., 210 F.2d 224 (3d Cir. 1954); Koslusky v. United States, 208 F.2d 957, 959 (2d Cir. 1953); Loverich v. Warner Co., 118 F.2d 690, 693 (3d Cir. 1941); Pyles v. American Trading & Prod. Corp., 244 F.Supp. 685, 687 (S.D. Tex.1965); Diniero v. United States Lines Co., 185 F.Supp. 818, 820, 821 (S.D.N.Y.1960); Meirino v. Gulf Oil Corp., 170 F.Supp. 515, 517 (E.D.Pa. 1959); Labenz v. National Shipping & Trading Corp., 153 F.Supp. 785, 786 (E. D.Pa.1957). See also Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed. 2d 88 (1962) (by implication); Carleno v. Marine Transport Lines, Inc., 317 F. 2d 662, 665 (4th Cir. 1963) (by implication); Carlsson v. United States, 252 F. 2d 352, 353 (2d Cir. 1958) (dictum).

5. Brailas v. United States, 79 F.Supp. 963 (S.D.N.Y.1948); Wilcox v. United States, 32 F.Supp. 947 (S.D.N.Y.1940); The Ball Bros., 35 F.2d 261 (W.D.N.Y.1929).

6. Two other district court decisions should be noted.

In Diaz v. Gulf Oil Corp., 237 F.Supp. 261, 266 (S.D.N.Y.1965), a seaman was awarded maintenance and cure from the last of a series of vessels upon which he suffered asthmatic attacks. This is not a holding that he could not have obtained maintenance and cure from any of his prior maritime employers.

Vassos v. Soc. Trans-Oceanica Canopus S.A., 205 F.Supp. 845, 846–847 (S.D.N. Y.1959), involved a seaman suffering from tuberculosis, a disease which may recur after a period of apparent arrest. The court held the vessel liable for maintenance and cure from the end of the voyage until the disease appeared to be cured, but not for a later period when an unpredictable reactivation of the disease established that the disease had not in fact been cured. Whether or not we agree with *Vassos*, its holding is inapplicable here. In the present case the complex of symptoms which eventually became disabling manifested itself shortly after the accident and progressively worsened until the seaman was disabled and ceased work. His illness was not apparently cured at any time, and did not reach a condition of maximum possible improvement prior to the date fixed by the trial court for the termination of appellant's obligation to furnish maintenance and cure.

Appellant argues that the proposed rule would fully serve the purposes for which maintenance and cure is provided,[7] and at the same time furnish a ready test for determining which vessel is liable for providing it. But it would seem apparent that the proposed rule would create problems which could only impede the seamen's efforts to secure relief.

Particularly where accidents are involved, seamen typically assert a claim for damages as well as a claim for maintenance and cure. Under the present rule they may advance both claims in a single suit against the vessel in whose service the accident occurred, as Mr. Martinez did in this case. This has obvious advantages to the parties and the court. Fitzgerald v. United States Lines, 374 U.S. 16, 18, 21, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Appellant's proposed rule, however, would require multiple suits whenever the claim for maintenance and cure included a perod after the seaman "voluntarily"[8] re-entered maritime employment, unless all of the vessels involved could be sued in the same jurisdiction.

Whenever a seaman's maintenance and cure claim was disputed by the last maritime employer, practical considerations might well lead the seaman to include that claim in his damage suit against the owner of the vessel in whose service the accident occurred, resulting inescapably in time-consuming controversy over the elusive issue of the voluntariness of the subsequent maritime employment.

## II

Appellant challenges the sufficiency of the evidence to support the conclusion that Mr. Martinez's mental illness was causally related to the injuries he received while a seaman in the service of appellant's vessel.[9]

Appellant contends that a substantial portion of the evidence supporting this conclusion was inadmissible, and that the evidence remaining was insufficient.

Appellant argues that a hypothetical question put to the doctors was defective because it required the witnesses to assume the very conclusion which the examiner wished to establish by the witnesses' answers—that is, that the seaman's nervous condition resulted from the injuries he sustained aboard the Silverbow. Appellant also argues that the expert witnesses were permitted to base their opinions upon factual assumptions not supported by evidence in the record, and upon opinions of other doctors who did not testify.

We are satisfied that if error occurred in the admission of evidence it was harmless.

7. "The reasons underlying the rule * * * are * * * the protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service." Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938).

8. Under appellant's proposal, a ship's liability for maintenance and cure would be terminated by the seaman's return to maritime employment only if the seaman acted voluntarily. Appellant recognizes that this limitation is required lest a

shipowner be encouraged to withhold maintenance and cure in order to compel sick or injured seamen to obtain re-employment and thus terminate the shipowner's obligation for maintenance and cure. Cf. Vaughan v. Atkinson, 369 U.S. 527, 533, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

9. This would be the appropriate inquiry in determining the limits of liability for negligence or unseaworthiness. Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20 (1961); Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1960). The parties assume that the same measure applies to the obligation to furnish maintenance and cure. We accept the assumption for the purposes of this case. We need not and do not decide whether it accurately reflects the law.

It would have been possible for the doctor witnesses to have interpreted the hypothetical question as appellant suggests. But this would have made patent nonsense of the inquiry and, in fact, the witnesses treated the question with serious concern. It is apparent that they understood what they were being asked, and answered accordingly.

█ Prior to testifying, the doctor witnesses had apparently read and considered medical reports containing recitations of fact. However, with only minor and unimportant exceptions these recitations were supported by other evidence in the record. The reports also contained the opinions of two doctors who did not testify. But from the whole testimony of the doctor witnesses we are satisfied that their own opinions were not materially affected by their awareness of the opinions of the non-testifying doctors. Cf. Clifton v. Mangum, 366 F.2d 250, 253 (10th Cir. 1966).

Moreover, the maintenance and cure issues were tried to the court, not the jury.[10] The record demonstrates that the court was well aware of the evidentiary problems involved. We may safely assume that the court gave appropriate consideration to these weaknesses in evaluating the expert testimony. Cf. Pasadena Research Laboratories v. United States, 169 F.2d 375, 385 (9th Cir. 1948).

Appellant also challenges the sufficiency of the evidence as a whole to establish causation, but we find it adequate. Prior to the accident the seaman was outgoing, cheerful, athletic, and free from symptoms. The blow which he received resulted in a laceration and rendered him unconscious. X-rays taken at a later date disclosed probable compression injury and nerve root involvement in the region of the sixth and seventh cervical vertebrae. The morning following the accident the seaman experienced head and back pains. He reported to the Captain, who sent him to the Public Health Service. There he again became unconscious. His wound was closed and he was returned to his ship; but he was unable to work for three days because of head pains and fever. Within twelve to fifteen days, in addition to continuing head and back pain, the seaman began to experience dizziness, blurring of vision, blackouts, and weakness and numbness in his arms and legs. These difficulties compelled him to lie down periodically for thirty to forty-five minutes. He became nervous and confused. Though ill, he continued to work aboard the Silverbow and other vessels in order to support his family. Finally, in January 1961, he left the vessel on which he was employed and flew home. His symptoms persisted. He was declared mentally ill and hospitalized in December 1962. In April 1963, he was released on out-patient family care, under medication. The expert witnesses classified his nervous condition as "post-traumatic personality disorder" or "post-concussion syndrome," and testified that it resulted from the head injury which he received aboard the Silverbow.

Appellant argues that the opinion testimony as to causation is based largely upon the absence of symptoms before the accident and their presence thereafter, and "The fallaciousness of such *post hoc, propter hoc* reasoning is too obvious to belabor." Appellant also points out that the seaman's symptoms were largely subjective, that he was examined and found fit for duty on several occasions, and that he continued to work and did not seek specialized medical help for a considerable period after the accident.

█ These are all relevant factors, which the trial court undoubtedly considered. They are not so compelling as to render the court's finding of causation clearly erroneous.

### III

█ Appellant contends that the seaman's claim for maintenance and cure is barred because he neglected, indeed refused, to utilize medical care which was available to him. The district court found, on sufficient evidence, that the

10. See note 1.

seaman's conduct was caused by his mental illness, and therefore did not work a forfeiture of his right to maintenance and cure. Sobosle v. United States Steel Corp., 359 F.2d 7, 11–12 (3d Cir. 1966). We agree.

Affirmed.