In the Matter of the Complaint of Phil **ROBBINS** as owner, and Kenneth Jones as charterer and owner pro hac vice of the vessel **BEAVER**, for Exoneration from or Limitation of Liability.

No. C78–687.

United States District Court,
W.D. Washington.

Nov. 16, 1983.

Robert M. Kraft, Schwabe, Williamson, Wyatt, Moore & Roberts, Seattle, Wash., for petitioners.

Charles E. Yates, Moriarty, Mikkelborg, Broz, Wells & Fryer, Seattle, Wash., for claimant.

## OPINION

SOLOMON, Senior District Judge:

Phil Robbins is the owner and Kenneth Jones is the charterer and owner *pro hac vice* of the M/V *Beaver*. They filed this action for exoneration or limitation of liability under 46 U.S.C. §§ 183–189. The claimant, David Mann, sought damages for injuries he suffered as a crew member on the *Beaver*. He sought to recover for negligence, unseaworthiness, failure to provide prompt medical care, loss of wages, a salvage claim, maintenance and cure, and future damages.

The case came to trial on June 18, 1980 before District Judge William T. Beeks. Judge Beeks issued a memorandum decision in which he held that Mann failed to show negligence and unseaworthiness, that Mann had received and accepted full compensation for his salvage service, and that Mann was not entitled to attorney fees. The district court awarded Mann $2,970.00 for maintenance and cure (297 days at $10.00 a day).

Mann appealed to the Ninth Circuit Court of Appeals. The Court of Appeals in an unpublished opinion affirmed the district court's holdings on negligence, unseaworthiness, and on the salvage claim. The appellate court remanded solely on the issues of maintenance and cure, failure to provide prompt medical care, and on claimant's right to attorney fees confined to that portion of the case concerning the failure to pay maintenance. The appellate court affirmed on all other issues. Thereafter, the case was assigned to me for all purposes.

Mann seeks $35,600.00 for maintenance, $36,787.00 for attorney fees, $50,000.00 in punitive damages, and an unspecified amount of damages for Jones' failure to provide prompt medical care.

## I.  *Facts*

Jones chartered the *Beaver* from Robbins to salvage Jones' boat, the *Trejo*, which had run aground in Russian Harbor at the southern end of Kodiak Island, Alaska. The voyage from the town of Kodiak to Russian Harbor took between sixteen and eighteen hours. The *Beaver* arrived between 4:00 and 6:00 a.m. on October 29.

On October 29, 1977, Mann injured his knee [1] while descending a five-step vertical ladder from the wheelhouse to the galley of the *Beaver*. Mann informed Jones of his injury and explained that if possible his knee should be reset within twenty-four hours.

The radio on the *Beaver* was not strong enough to reach Kodiak, so Jones radioed a nearby boat, the *King of Wing*, and asked that a message be sent that an injured man on the *Beaver* needed to be evacuated. Jones also radioed another boat, the *Mariner*, and asked it to radio the Coast Guard. The skipper of the *Mariner* radioed the Coast Guard but it refused to come out for such a minor injury. The *Mariner* did arrange for a small plane to bring a tow line to the boats and to fly Mann back to Kodiak. A Cessna 185 seaplane flew out but it was unable to land by the boats because of high winds and rough seas. The plane dropped the towline in a nearby lagoon where members of the *Mariner's* crew retrieved it. A second plane arrived the next morning and took Mann to Kodiak.

Mann's knee was operated on soon after he arrived in Kodiak. His leg was placed in a cast, and he was discharged from Kodiak Hospital on November 5, 1977. He was referred to the Public Health Hospital in Seattle, Washington but lived at home for the rest of the year.

Mann returned to work in June, 1978 on a salmon seiner. He worked on the vessel (as a helmsman) until August, 1978 and grossed $23,582.00. He also fished the next salmon season from June 12, 1979 through August 12, 1979. On December 6,

---

1.  He had previously injured the same knee in a skiing accident in 1975.

1979, Dr. David Karges operated on Mann's knee. Mann was discharged from the hospital on December 12, 1979. He returned to work in April of 1980 aboard his own boat, the *Princess*, and has been working since that time.

## II. *Discussion*

### A. *Failure to Provide Prompt Medical Care*

■ The master of a ship has the duty to exercise the same reasonable care to aid an injured seaman as an ordinary prudent person would under the same circumstances. *The Iroquois*, 194 U.S. 240, 242–43, 24 S.Ct. 640, 641, 48 L.Ed. 955 (1904). To judge the reasonableness of Jones' conduct, the court should consider all the circumstances.

■ Jones, as soon as he learned of Mann's injury, attempted to have him evacuated from the *Beaver*. Jones radioed two nearby ships and asked them to radio Kodiak for assistance. Jones also requested help from the Coast Guard, but the Coast Guard did not consider Mann's injury serious enough for evacuation. A plane requested by Jones flew out, but it was unable to land near the *Beaver* because of the weather. The plane did land in a protected lagoon away from the boats and the *Beaver* did receive a tow line off that plane, but Jones' crew had no contact with the plane. Jones reasonably chose not to send an injured man out in a small skiff on rough seas to find the plane. The plane returned the next morning and evacuated Mann to Kodiak. In addition, Mann was not in great pain, and he did not insist on leaving the vessel immediately. Mann was not required to perform his regular duties after his injury. However, he was able to and did stand watch while the others worked on the *Trejo*. Mann cooked for himself and offered to cook lunch for another crew member, but there is no credible evidence that he was required to cook for the rest of the crew. Furthermore, Mann's treating physician testified that the thirty-six hour delay did not have any adverse effect on Mann's condition.

In view of the nature and extent of Mann's injury, the distance from the nearest medical facility, the adverse weather conditions, and Jones' multiple attempts to evacuate Mann, I find that Jones placed Mann on a plane for Kodiak as soon as circumstances permitted. Jones' actions were reasonable. Mann's claim for damages for failure to provide prompt medical care is denied.

### B. *Maintenance and Cure*

■ A seaman's right to maintenance and cure for an injury suffered or aggravated while in the ship's service is well established. It is not based on negligence or unseaworthiness, but it is a right given by general maritime law that arises out of the relationship between the seaman and his vessel. Fault is not at issue. Mann's cure was furnished without cost to him by the United States Public Health Service. The issue is: how much do plaintiffs owe Mann for maintenance?

#### 1. *Number of Days for Which Maintenance is Owed*

■ A seaman is entitled to maintenance until he reaches the maximum level of cure; that is, until he is well or until it appears that his condition will no longer improve. *Permanente Steamship Corp. v. Martinez*, 369 F.2d 297, 298 (9th Cir.1966); *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir.1979). The date when the obligation of maintenance and cure ends is a question of fact. A seaman's employment on another vessel is evidence that he has fully recovered, but it is not conclusive. A seaman may still show that he has not reached a point of maximum cure despite his employment. *Martinez*, 369 F.2d at 299.

■ Mann returned to work in June, 1978 aboard a salmon seiner. Although the exact nature of his duties is unclear, it appears that he worked as a helmsman and could not function in other capacities because of his knee. Again in the summer of 1979, Mann worked a salmon fishing vessel. These two periods of employment

alone are not sufficient to conclude that Mann had reached a point of maximum cure. In December, 1979, Dr. Karges performed further surgery on Mann's knee. It appears that shortly afterwards Mann began work on his boat in preparation of the fishing season. He commenced fishing for himself in April, 1980 and has continued to work since that time. He testified that he could do anything with his knee during the 1980 fishing season that he could do during the 1981 season. Mann's permanent return to work in April, 1980 is a reasonable time to terminate Mann's eligibility for maintenance and cure.

Mann is eligible for maintenance for the period from October 31, 1977 to April 1, 1980, except for those periods when he was given food and lodging at no cost to himself. The excluded periods are (1) the time he was hospitalized (12 days); and (2) the time he spent fishing (where his room and board were provided by the operator of those ships—129 days). This leaves a period of 741 days for which Mann was eligible for maintenance.

### 2. *Rate of Maintenance*

■ The rate of maintenance should reflect the quality of food and lodging on the ship and the cost of its equivalent on shore. *Tate v. American Tugs, Inc.*, 634 F.2d 869, 870–71 (5th Cir.1981). Therefore, the proper amount in a given case will depend on what was furnished on the ship and the cost of comparable food and lodging in the place where the seaman is living. Recent cases report rates of maintenance which vary upwards beginning at $8.00 a day, *Tate*, 634 F.2d at 870, to $40.00 a day, *Harper v. Zapata Off-Shore Co.*, 563 F.Supp. 576 (E.D.La.1983).

■ The amount of maintenance is a factual question, and the seaman has the burden to show the expenditures or liability incurred by him for food and lodging. *Spanos v. The Lily*, 261 F.2d 214, 215 (4th Cir.1958). The only evidence submitted to this court was Mann's testimony that the cost of supporting himself between 1977 and 1981 was approximately $750.00 a month and his earlier testimony that he spent approximately $250.00 a month on food alone. Five hundred dollars a month for rent is unreasonable for lodging that is comparable to what he would have received on the boat. Mann does not submit any records to support his claim, and much of his testimony on this and other issues lacks credibility. Mann presented evidence that the Alaska Fishermen's Union established a rate of $18.00 a day. This may reflect the cost of food and lodging in Alaska and not in Washington where Mann lived and where the cost of living is less.

Despite the lack of formal proof, the evidence justifies an inference that Mann spent some money or incurred some liability for his maintenance. After considering all of the factors involved, I find that $14.00 a day for a period of 741 days or a total of $10,374.00 is a reasonable amount, and probably a generous amount, to be allowed Mann for maintenance.

### C. *Attorney Fees*

The Court of Appeals held this to be a proper case for the allowance of attorney fees on that portion of the case concerning the failure to pay maintenance. In reaching this conclusion, the court relied heavily on the Supreme Court's opinion in *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). In *Vaughan*, a seaman had to hire an attorney and bring an action to recover maintenance and cure. The seaman agreed to pay the lawyer a fifty percent contingent fee. But *Vaughan* offers little guidance on the proper amount of attorney fees or whether the contingency figure provides a ceiling. The inquiry is simply one of reasonableness.

To determine a reasonable attorney fee, I have examined the twelve factors set out by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975).

■ Here, the Court of Appeals has directed that attorney fees be paid only for the time spent on the maintenance issue. Mann's counsel asserts that he spent a

total of 472.6 hours on this case. And he estimates 244.18 were expended on the maintenance issue. I find that this estimate is grossly overstated for even a moderately competent lawyer. An action for maintenance is relatively easy to present.[2] There is no need to show fault. To state an action, Mann only had to show (1) that he was a seaman, (2) that his injury occurred or was aggravated while in the ship's service, and (3) the expenditures he made on food and lodging.

Mann's attorney submits a detailed breakdown of the time spent in this case. A careful examination of these records does not indicate that 244.18 hours were reasonably spent on the maintenance issue. Most of the time in the first trial appears to be devoted to the liability issue. The maintenance aspect of this case required little or no discovery or research. The maintenance issue did not merit 103.5 hours of preparation for the appellate brief. After carefully reviewing the time sheets, it is difficult to see how any more than fifty hours, or more than a solid week of work, can be reasonably allocated to this simple issue.

■ There are no particularly novel or difficult questions presented here, nor was there any extraordinary skill requisite to successfully pursue this issue. Mann's attorney has not shown that this case has precluded him from other employment or that this case was "undesirable" in any way. No evidence was introduced regarding the customary fee charged in an action for maintenance. There were no time limitations imposed by the client. Mann's attorneys are reasonably experienced in maritime matters, but their professional relationship with Mann does not appear to be of any special significance. Finally, the awards in similar cases appear to be much lower than that being requested by the plaintiff here.

The only positive factor that Mann's attorneys have shown is the contingent fee arrangement. This is a positive factor because of the risk involved. This risk, however, was minimal on the issue of maintenance. Here, the Court of Appeals directed that maintenance be paid.

A reasonable fee for the services provided is $75.00 an hour. Multiplied by the 50 hours which I believe is generous for the work performed on the issue of maintenance, Mann's attorney is entitled to a fee of $3,750.00.

### D. Punitive Damages

Mann contends that in addition to maintenance and attorney fees, this court should award punitive damages. Courts have awarded punitive damages when a ship master has failed to pay maintenance maliciously, or with reckless indifference to the rightful claim of the seaman. *See, e.g., Harper v. Zapata Off-Shore Co.,* 563 F.Supp. 576 (E.D.La.1983).

There is some confusion in the circuits over the question of whether a claimant is entitled to both attorney fees and punitive damages. Compare *Robinson v. Pocahontas, Inc.,* 477 F.2d 1048 (1st Cir.1973) (punitive damages were awardable outside exemplary recovery of attorney fees) with *Kraljic v. Berman Enterprises,* 575 F.2d 412 (2d Cir.1978) (characterized the *Vaughan* decision as awarding counsel fees as punitive damages). This issue need not be decided in this case because there is no conduct here that would justify punitive damages.

### E. Conclusion

I award Mann maintenance in the amount of $10,374.00 and attorney fees in the amount of $3,750.00. Mann has failed to establish that Jones breached any duty by failing to provide him with prompt medical care, and I deny recovery on that claim. Furthermore, there was no conduct here

---

**2.** The seaman's right to recover maintenance and cure for an injury suffered while in the service of the vessel is relatively simple and its legal enforcement is devoid of technicalities.

*See Vella v. Ford Motor Co.,* 421 U.S. 1, 4, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682 (1975); *Farrell v. United States,* 336 U.S. 511, 516, 69 S.Ct. 707, 709, 93 L.Ed. 850 (1949).

which would justify an allowance of punitive damages.

This opinion constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.