**Rodwan SABOW, Plaintiff,**

v.

**AMERICAN SEAFOODS COMPANY, Defendant.**

**CASE NO. C16–0111–JCC**

United States District Court, W.D. Washington, at Seattle.

Signed May 24, 2016

Marissa A. Olsson, Robert M. Kraft, Kraft Palmer Davies, Seattle, WA, for Plaintiff.

Anthony J. Gaspich, Gaspich Law Office PLLC, Seattle, WA, for Defendant.

## ORDER

John C. Coughenour, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on Plaintiff Rodwan Sabow's motion to dismiss counterclaims by Defendant American Seafoods Company (ASC) (Dkt. No. 9) and motion to compel ASC to pay maintenance (Dkt. No. 10). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motions for the reasons explained herein.

## I. BACKGROUND

Sabow began to experience back pain in February 2015 while working as a fish processer aboard an ASC vessel. (Dkt. No. 12 at 1.) On April 2, 2015, Sabow's back pain became severe, and he ceased working. (*Id.* at 2.) Sabow remained on the vessel until April 11, 2015, when he returned to his home in Burien, Washington. (*Id.*)

Sabow began treatment for his injury and continues to receive medical treatment at this time. (*Id.*) He underwent surgery on his back in February 2016. (*Id.*) ASC has paid for all of Sabow's medical treatment thus far. (*Id.*)

ASC has also paid Sabow daily maintenance in the amount of $30.00, the rate set forth in his employment contract. (*Id.* at 2, 13.) However, Sabow's room and board expenses exceed $30.00 per day. (*Id.* at 2, 18–22.) Sabow thus requested an increased daily maintenance amount of $37.90, based on his actual expenses. (Dkt. No. 11 at 2.) ASC rejected the request. (*Id.*)

On January 26, 2016, Sabow filed this suit, solely seeking an increase in maintenance. (Dkt. No. 1.) On February 4, Sabow's counsel wrote a letter to defense counsel stating that Sabow was in dire financial straits and that filing of the maintenance issue alone should not be construed as abandonment of a Jones Act claim. (Dkt. No. 11 at 5.) Rather, counsel explained, Sabow intentionally limited the scope of this action in the interest of swift resolution. (*Id.*)

On February 25, ASC counterclaimed for declaratory relief on its liability for Jones Act negligence and unseaworthiness. (Dkt. No. 7.) Sabow now moves to dismiss ASC's counterclaims and to compel ASC to pay maintenance at the increased daily amount of $37.97. (Dkt. No. 9 at 1; Dkt. No. 10 at 1.)

## II. DISCUSSION

### A. Motion to Dismiss

Sabow argues that ASC's counterclaims should be dismissed, because they are precluded by a seaman's right to have maintenance claims heard separately, barred by a seaman's choice-of-forum privilege, and contrary to the purpose of the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. (Dkt. No. 9 at 1.)

A party may move for dismissal when the opposing party "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

#### 1. Bringing Maintenance Claims Separately

Sabow first argues that ASC's claims for declaratory relief are barred by his right to have his maintenance claim heard separately from his Jones Act and unseaworthiness claims. (Dkt. No. 9 at 4.) It is true that a seaman is not required to join all his claims in one action. *Tate v. Am. Tugs, Inc.*, 634 F.2d 869, 871 (5th Cir. 1981); *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 402 n.14 (5th Cir. 1979); *The Rolph*, 299 F. 52, 55–56 (9th Cir. 1924). For example, seamen may choose to file separately because "a maintenance and cure claim is relatively uncomplicated, [meaning] it is occasionally wiser to try the action separately from the Jones Act or unseaworthiness claim that may also be available." 1B–IV BENEDICT ON ADMIRALTY § 43 (2015). However, no case cited goes so far as to establish a *right* to separately trying the claims. While the Court appreciates Sabow's purpose behind bringing a separate maintenance claim, the authority cited does not demonstrate that dismissal is appropriate under Rule 12(b)(6).

#### 2. Choice-of-Forum Privilege

Sabow further argues that ASC's claims run afoul of his choice-of-forum privilege. (Dkt. No. 9 at 6.) It is well-established that a seaman has the right to choose the forum in which his or her Jones

Act claim is litigated. For example, Congress explicitly prohibited removal of Jones Act claims to federal court. 28 U.S.C. § 1445(a); *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020, 1022 (2d Cir. 1984). Indeed, numerous courts have acknowledged a seaman plaintiff's right to decide whether to bring a Jones Act claim in state or federal court. *See, e.g., Gonsalves*, 733 F.2d at 1022; *Gates Constr. Corp. v. Koschak*, 792 F.Supp. 334, 337 (S.D.N.Y. 1992); *Westar Marine Servs., Inc. v. Bayly*, 2010 WL 1881093 at *1 (N.D. Cal. 2010 May 10, 2010); *Anderson v. Great Lakes Dredge and Dock Co.*, 411 Mich. 619, 309 N.W.2d 539, 541 (Mich. 1981). It is further reasonable to conclude that this choice-of-forum privilege extends to unseaworthiness claims. *See McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 225–26, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958) (reasoning that, because Jones Act and unseaworthiness must be tried together, Jones Act statute of limitations applies to both); *Skaw v. Lady Pacific, Inc.*, 577 F.Supp. 2, 4 (D. Alaska 1983) (considering Jones Act and unseaworthiness claims together when determining whether to remand).

However, as ASC points out, Sabow has not cited authority where a court upheld a seaman's choice-of-forum privilege as to a Jones Act claim after he or she already filed a maintenance claim in federal court. (*See* Dkt. No. 19 at 7.) This appears to be a question of first impression. Ultimately, though, ASC's filing has the effect of denying Sabow the ability to choose where his Jones Act claim is litigated. In light of this effect, the Court concludes that dismissal of ASC's counterclaims is appropriate.

This outcome is in line with the approach taken by other district courts considering the choice-of-forum privilege under § 1445(a). For example, in *Koschak*, the plaintiff brought a Jones Act suit in state court, after which the defendant sought declaratory judgment on the claim in federal court. 792 F.Supp. at 335. In deciding not to exercise jurisdiction over the defendant's claim, the court reasoned that, "[m]ost importantly, proceeding with the declaratory judgment action would enable defendant to circumvent the Jones Act's removal prohibition." *Id.* at 337.

Similarly, in *Skaw*, the court honored a seamen's choice-of-forum privilege under § 1445(a). 577 F.Supp. at 4. There, the plaintiff sued in state court for Jones Act negligence, unseaworthiness, and maintenance and cure. *Id.* at 2–3. The defendants removed the case under 28 U.S.C. § 1441(c), which allows for removal of separate and independent causes of action that would be removable if sued on alone, when those claims are joined with non-removable claims. *Id.* at 3. The defendants argued that, because the plaintiff's maintenance and cure claim was separate and independent from his Jones Act claim, the entire action was removable. *Id.* The district court rejected this argument, reasoning that it "effectively destroyed" the seaman's right to choose a forum. *Id.* at 4. The court further reasoned that removal would "discourage[ shipowners] from promptly paying maintenance and cure claims" and "cause considerable harm to injured seamen." *Id.*

■ The *Skaw* court is not the only to acknowledge the necessity of prompt maintenance payment. For example, the Ninth Circuit stated:

"The adequate protection of an injured or ill seaman against suffering and want requires more than the assurance that he will receive payments at some time in the indefinite future. Payments must be promptly made, at a time contemporaneous to the illness or injury. And for this reason the maintenance remedy should be kept simple, uncluttered by fine dis-

tinctions which breed litigation, with its attendant delays and expenses." *Crooks v. United States*, 459 F.2d 631, 634–35 (9th Cir. 1972) (quoting *Vaughan v. Atkinson*, 369 U.S. 527, 537–38, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (J. Stewart, dissenting)). As the *Skaw* court explained, "[t]his policy exists so that payments will be made to the seaman at the time he will be most in need of them." 577 F.Supp. at 4.

Despite the clear policies in Sabow's favor, ASC maintains that the motion to dismiss should be denied. In support, ASC cites two cases from the Eastern District of Louisiana, *Torch, Inc. v. Theriot*, 727 F.Supp. 1048 (E.D. La. 1990) and *Belle Pass Towing Corp. v. Cheramie*, 763 F.Supp. 1348, 1349 (E.D. La. 1991). (Dkt. No. 19 at 7–8.) However, given the questions considered in those cases, they do not compel the outcome ASC seeks.

In *Torch*, a seaman was injured while working on a barge, and he made informal requests to the barge owner's insurance company about payment for his subsequent surgery. 727 F.Supp. at 1049. These requests prompted the barge owner to file a complaint for declaratory relief as to its liability for the seaman's maintenance and cure benefits. *Id.* The seaman moved to dismiss, arguing that refusing to dismiss the declaratory judgment action would deny him his right to a choice of forum under the "saving to suitors" clause of 28 U.S.C. § 1333. *Id.* at 1051. Section 1333 states: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" (Emphasis added.) The *Torch* court acknowledged that the clause "allows the plaintiff in an *in personam* admiralty suit the option of bringing his case in either the federal or state courts." 727 F.Supp. at

1051. However, it reasoned that there was no authority for extending the doctrine to preclude federal court actions, declaratory or otherwise. *Id.*

According to ASC, *Torch* establishes that a vessel owner can seek declaratory relief in federal court if a seaman has not yet indicated his preference for state court. (Dkt. No. 19 at 7.) But the present case is distinguishable, as it pertains to a seaman's choice-of-forum privilege under § 1445(a), not the saving to suitors clause under § 1333. This distinction is important, because, unlike § 1333, § 1445(a) states a specific preclusion against removal to federal court. As the *Belle Pass* court acknowledges, "the Saving to Suitors Clause is intended to preserve common law *remedies*, not to guarantee a plaintiff a particular forum." 763 F.Supp. at 1354. *Torch* does not control the outcome here.

Nor does *Belle Pass*. In that case, as in *Torch*, a vessel owner filed a declaratory judgment action seeking to determine whether it owed a seaman maintenance and cure. 763 F.Supp. at 1349. The seaman moved to dismiss, arguing that the vessel owner was on notice of a probable Jones Act suit in state court, and that refusing to dismiss the declaratory judgment act would deny him his right to choice of forum under § 1333. *Id.* The *Belle Pass* court reasoned that, without an actual filing of a Jones Act suit, "deciding whether to preserve a suitor's remedies or avoid unjust preclusion would not even be before the court. In this regard, it would be pure speculation for a court to rule on issues which may or may not arise." *Id.* at 1356.

ASC maintains that, under *Belle Pass*, dismissal is not required because there is no pending Jones Act suit. (Dkt. No. 19 at 8.) But again, because § 1445(a) was not at issue in *Belle Pass*, the present case is distinct. Here, there is no speculation about the impact of ASC's declaratory

judgment action—rather, it is clear that Sabow was denied his right to choose his forum by having ASC choose it for him.

The Court thus concludes that Sabow's choice-of-forum privilege warrants dismissal of ASC's counterclaims. Given this conclusion, it is not necessary to address Sabow's argument as to the purpose of the Declaratory Judgment Act.

Sabow's motion to dismiss ASC's counterclaims is GRANTED.

### B. Motion to Compel

Sabow moves the Court to compel ASC to: pay ongoing maintenance at the increased rate of $37.97, retroactive to April 11, 2015; mail all future maintenance payments with sufficient time that Sabow receives payment by the first and fifteenth day of the month; and pay costs incurred by Sabow due to ASC's method of issuing checks. (Dkt. No. 10 at 1.)

■ When a seaman is injured in the service of his vessel, it is the vessel owner's duty to pay the seaman maintenance (compensation for room and board) and cure (payments for medical treatment necessary to restore the seaman to health). *Vaughan v. Atkinson*, 369 U.S. 527, 532 n.4, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); MARTIN J. NORRIS, THE LAW OF SEAMEN §§ 26:5–26:6 (3d ed.1985). The vessel owner must continue to pay maintenance and cure until the seaman reaches "maximum cure," a recovery as complete as the injury allows. *Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 298–99 (9th Cir. 1966). The parties do not dispute at this time that Sabow is entitled to maintenance.

#### 1. Amount of Maintenance

■ However, the parties do dispute the proper amount of maintenance owed. Thus far, ASC has paid Sabow a daily rate of $30.00, as set forth in his employment contract. (Dkt. No. 12 at 2.) Sabow seeks to increase the daily amount to $37.97,

based on his actual room and board expenses. (Dkt. No. 10 at 1.)

■ "A seaman's right to a reasonable payment for maintenance is a legal right that cannot ordinarily be abrogated by contract." *Rowell v. Tyson Seafood Grp., Inc.*, 1999 WL 1293554 (W.D. Wash. May 6, 1999) (citing *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932)). The Ninth Circuit has held that a collective bargaining agreement limiting the amount of maintenance is enforceable; however, this generally does not extend to individual employment contracts. *Gardiner v. Sea–Land Serv., Inc.*, 786 F.2d 943, 948–50 (9th Cir. 1986); *Am. Seafoods Co. v. Nowak*, 2002 WL 31262105 (W.D. Wash. Feb. 25, 2002). Here, it is undisputed that Sabow had an individual employment contract. (Dkt. No. 10 at 6.) Thus, the Court is not bound by the $30.00 daily rate established in his contract. Instead, the Court must determine the appropriate amount of maintenance in this case.

As a preliminary matter, the parties dispute the proper standard of review when reviewing a pretrial motion regarding the reasonable amount of maintenance. This is an open question in the Ninth Circuit.

Quoting this Court's order in *Buenbrazo v. Ocean Alaska, LLC*, 2007 WL 3165523 (W.D. Wash. Oct. 24 2007), ASC asserts that "the summary judgment standard should be applied to a pre-trial motion to compel maintenance and cure." (Dkt. No. 14 at 6.) In *Buenbrazo*, this Court recognized the "obvious tension" between the summary judgment standard, where the facts are construed in a light most favorable to the non-moving party, and the canon of admiralty law providing that all doubts be resolved in favor of the seaman. 2007 WL 3165523 at *1. The Court ultimately applied the summary judgment

standard in determining the seaman's right to maintenance and cure. *Id.*

Sabow responds that the summary judgment standard applies only where there is a dispute as to whether benefits are owed at all; in situations like this, he argues, any doubts should be resolved in his favor. (Dkt. No. 20 at 2–3.) Sabow cites *Dean v. Fishing Co. of Alaska, Inc.*, 177 Wash.2d 399, 300 P.3d 815, 821–22 (Wash. 2013), where the Washington Supreme Court held that the summary judgment standard applies only to determine a seaman's *initial* entitlement to maintenance and cure. The court reasoned that this initial entitlement "presents legal questions that can properly be resolved on summary judgment," but that "it does not necessarily follow that the summary judgment standard must be applied to a seaman's motion to reinstate maintenance and cure." *Id.* at 822–23. In reaching this conclusion, the *Dean* court relied on *Gouma v. Trident Seafoods, Inc.*, 2008 WL 2020442 at *2 (W.D. Wash. Jan. 11, 2008), a case from this District where Judge Pechman made the same distinction.

None of these cases address the current set of facts, where the issue is the amount of maintenance—not a seamen's entitlement thereto. To be sure, this is an important question that, in some cases, could impact the outcome of a seaman's motion. Here, however, it is not necessary to resolve the issue, because ASC has not shown any true dispute of fact.

■ Turning to the question of reasonable maintenance, the parties further dispute whether the reasonableness of a seaman's expenses should be measured against the costs of lodging aboard ship or on land in that particular locale. (*See* Dkt. No. 10 at 9; Dkt. No. 14 at 8.) Traditionally speaking, a seaman is entitled to food and lodging of the kind and quality he or she would receive aboard ship. *Gardiner*, 786 F.2d at 946. However, modern courts have recognized the "practical and conceptual difficulties" of tying maintenance solely to the conditions on board. *Hall v. Noble Drilling*, 242 F.3d 582, 587 (5th Cir. 2001). When determining the proper rate of maintenance, Judge Robart considered "what is reasonable in the seaman's locale and not simply what would cover the literal equivalent of conditions aboard the ship." *Walsh v. F/V Arctic Baruna I*, 2006 WL 2289263 at *3 (W.D. Wash. Aug. 8, 2006) (citing *Hall*). This Court agrees that this is the proper inquiry, given the ameliorative purpose of maintenance payments and the reality of the circumstances.

Next, in determining the reasonable amount of maintenance in Sabow's locale, it is again unclear what approach the Court should take. Neither party cites a United States Supreme Court or Ninth Circuit case on the subject; the Court's own research similarly revealed no such case. Other district courts in this circuit have cited to persuasive authority in determining the proper test. *See, e.g., Barnes v. Sea Hawaii Rafting, LLC*, 16 F.Supp.3d 1171, 1178 (D. Haw. 2014); *Rutherford v. Sea–Land Serv., Inc.*, 575 F.Supp. 1365, 1369 (N.D. Cal. 1983).

For example, in *Rutherford*, the Northern District of California cited the Fifth Circuit in concluding that the reasonable amount of maintenance was "a question of fact to be resolved by the trial court based upon all of the evidence before it." 575 F.Supp. at 1369 (citing *Morel v. Sabine Towing and Transp. Co. Inc.*, 669 F.2d 345, 347 (5th Cir. 1982)). The court noted that this might include evidence such as expert testimony, rates in local union contracts, and previous maintenance awards. *Id.* However, the court stated that "[e]vidence of the seaman's actual expenditures is the preferred method of determining the amount of the daily maintenance payment owed to the seaman." *Id.*

Similarly, in *Barnes*, the District of Hawaii cited the Fifth Circuit in applying a three-part test for determining the maintenance award:

"First, the court must estimate two amounts: the plaintiff seaman's actual costs of food and lodging; and the reasonable cost of food and lodging for a single seaman in the locality of the plaintiff. In determining the reasonable costs of food and lodging, the court may consider evidence in the form of the seaman's actual costs, evidence of reasonable costs in the locality or region, union contracts stipulating a rate of maintenance or per diem payments for shoreside food or lodging while in the service of a vessel, and maintenance rates awarded in other cases for seamen in the same region.

. . .

Second, the court must compare the seaman's actual expenses to reasonable expenses. If actual expenses exceed reasonable expenses, the court should award reasonable expenses. Otherwise, the court should award actual expenses. Thus, the general rule is that seamen are entitled to maintenance in the amount of their actual expenses on food and lodging up to the reasonable amount for their locality.

Third, there is one exception to this rule that the court must consider. If the court concludes that the plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging,

the plaintiff is entitled to the amount that the court has determined is the reasonable cost of food and lodging." *Barnes*, 16 F.Supp.3d at 1178 (D. Haw. 2014) (quoting *Hall*, 242 F.3d at 590)).

■ Sabow cites authority from the Second Circuit taking a slightly different approach: a burden-shifting test under which a seaman must make an initial *prima facie* showing that his living expenses are reasonable. *Incandela v. Am. Dredging Co.*, 659 F.2d 11, 14 (2d Cir. 1981); *see also Clifford v. Mt. Vernon Barge Serv., Inc.*, 127 F.Supp.2d 1055, 1057 (S.D. Ind. 1999). Under this framework, a "seaman makes out a prima facie case on the maintenance rate question when he proves the actual living expenditures which he found it necessary to incur during his convalescence."[1] *Incandela*, 659 F.2d at 14. Once the seaman makes the proper showing, the burden shifts to the vessel owner to produce rebuttal evidence. *Incandela*, 659 F.2d at 14; *Clifford*, 127 F.Supp.2d at 1057.

Although these tests vary in certain respects, they are largely consistent with one another: each requires the Court to make a determination of reasonableness based on a consideration of a seaman's actual expenses and the reasonable cost of room and board in the seaman's locale.[2] The Court believes that, of the three, *Incandela* provides the clearest framework, and therefore adopts the burden-shifting test here.[3]

---

**1.** The Fifth Circuit similarly has concluded that a seaman's burden of proof is minimal and typically consistent of his or her own testimony. *See Yelverton v. Mobile Laboratories, Inc.*, 782 F.2d 555, 558 (5th Cir. 1986) ("A seaman's burden of production in establishing the value of his maintenance is feather light: his own testimony as to reasonable cost of room and board in the community where he is living is sufficient to support an award.").

**2.** It may even be possible to read the three together, although the Court declines to make that undertaking at this time.

**3.** The Court notes, however, that whether it applied the test from *Barnes, Rutherford,* or *Incandela*, it would arrive at the same conclusion: Sabow's requested maintenance is reasonable.

Under this test, the burden of proof falls first on Sabow to make a *prima facie* showing that his living expenses are reasonable. Sabow presented evidence that he rents a one-bedroom apartment with monthly rent of $800.00.[4] (Dkt. No. 12 at 2.) The evidence demonstrates that $800.00 falls within a typical price range for a one-bedroom apartment in Sabow's locale. (*See* Dkt. No. 15–14.) "If a seaman rents a one-bedroom apartment for a reasonable amount, he is certainly entitled to reimbursement for all of his actual lodging expenses, since this is modest for even a single person." *Hall*, 242 F.3d at 589. Sabow further provided evidence that his monthly *pro rata* electricity costs are $35.38 and that a moderate-cost food plan for a man his age amounts to $303.60. (Dkt. No. 12 at 2–3.) Sabow has thus provided *prima facie* evidence to support his maintenance request of $37.97 per day.[5]

In response, ASC presents evidence and argument that the $30.00 rate contained in the employment agreement is reasonable. (Dkt. No. 14 at 10.) But, that is not the question; rather, it is ASC's burden to show that Sabow's proposed amount of $37.97 is unreasonable. ASC's evidence shows only that it was possible for Sabow to live somewhere less expensive. (*See* Dkt. No. 15–14.) But, again, this is not the proper inquiry. Sabow need not find the cheapest accommodations—his accommodations need simply be reasonable.

■ ASC further asserts that, because Sabow lives with his wife and two children, the amount of his rent should be prorated. But, as the *Hall* court notes, that is not appropriate when a seaman shares his home with his family:

A seaman who pays for the rent or mortgage of a home he shares with his family actually spends out-of-pocket the entire amount. He cannot pay any less without losing his home. If a seaman would incur the lodging expenses of the home even if living alone, then the entire lodging expense represents the seaman's actual expenses.

242 F.3d at 589. The Court thus finds that Sabow's entire monthly rent expense is reasonable.

■ ASC next argues that, because it previously provided Sabow a $2,500.00 advance, any award of maintenance should be offset by that amount. (Dkt. No. 14 at 15; *see also* Dkt. No. 16–2 at 1.) ASC provided Sabow with this advance in July 2015 "to cover unexpected expenses such as repairing or replacing the transmission in [his] automobile." (Dkt. No. 16–2 at 1.) ASC notified Sabow that "repayment will be made by way of deduction from any final settlement, judgement [sic] or dispute in benefits, namely that of maintenance." (Dkt. No. 16–2 at 1.) Contrary to ASC's assertion, this matter of offset creates no dispute of fact. (*See* Dkt. No. 14 at 15.) Instead, it presents the legal question of whether the amount of the advance should be applied against an increase in monthly maintenance. The Court agrees with Sabow that to offset the amount against monthly maintenance would be contrary to the "broad and beneficial" purpose underlying the payments. *See Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 735, 63

---

4. ASC notes that Sabow's rent was $775.00 between April and October 2015. (Dkt. No. 14 at 13; *see also* Dkt. No. 12 at 19.) The Court agrees with ASC that this decreased rent should be taken into consideration when determining maintenance owed.

5. ASC asserts that it has not had the chance to verify the basis or accuracy of Sabow's representations as to his living expenses. (Dkt. No. 14 at 13.) But, Sabow has presented documentary evidence and a sworn declaration to make his *prima facie* showing. The Court sees no reason to doubt the accuracy of his assertions.

S.Ct. 930, 87 L.Ed. 1107 (1943); *see also Lipscomb v. Foss Maritime Co.*, 83 F.3d 1106, ("The purposes of [the right to maintenance and cure] are threefold: (1) to protect poor and improvident seamen; (2) to encourage shipowners to protect seamen's health and safety; and (3) to induce employment in the merchant marine."). Accordingly, the Court finds that the $2,500.00 advance shall not be applied against monthly maintenance awarded in this motion.

Sabow's motion for increased maintenance is GRANTED. The Court ORDERS ASC to pay: (1) back maintenance at the daily amount of $37.13 from April 2015 to October 2015,[6] less the amount of maintenance already paid; (2) back maintenance at the daily amount of $37.97 from November 2015 to the present, less the amount of maintenance already paid; and (3) ongoing maintenance at the daily amount of $37.97.

### 2. *Timely Receipt of Maintenance Payments*

Sabow further asks the Court to order ASC to remit payment in a timely fashion such that Sabow receives the maintenance check by the first and fifteenth day of the month. (Dkt. No. 10 at 2.) ASC issues maintenance checks on the fifteenth and last day of each month. (Dkt. No. 11 at 31.) Initially, ASC issued maintenance checks directly to Sabow. (Dkt. No. 12 at 3.) However, once Sabow retained counsel, ASC began issuing checks to "Rodwan Sabow c/o Gaspich Law Office PLLC [ASC's counsel]." (*Id.* at 4.) As a result of the reference to Gaspich Law Office, Sabow's bank would not accept his check and he was forced to cash multiple checks at Money Tree, where he incurred check cashing fees. (Dkt. No. 12 at 4.) In addition, ASC now sends the maintenance checks first to its counsel, who in turn sends the checks to Sabow's counsel, who then delivers the checks to Sabow. (Dkt. No. 11 at 31.)

Neither party cites authority on the timeliness of maintenance payments. Logically speaking, though, the Court firmly believes that the payments should be made in the most straightforward, efficient manner possible. Going forward, ASC should send Sabow's check directly to him and payable only to him, with no reference to Gaspich Law Office. While ASC should endeavor to send the check to Sabow as soon as reasonably possible, the Court declines to impose a court-ordered deadline for receipt of checks or to order ASC to compensate Sabow for the fees he incurred at Money Tree.

### C. Attorney Fees

 Sabow asks for an award of attorney fees incurred in bringing the two present motions. (Dkt. No. 9 at 11; Dkt. No. 10 at 10.) If a seaman must take legal action to recover maintenance and cure payments to which he is entitled, and if the vessel owner had no good cause for failure to pay, the seamen is entitled to attorney fees. *See Vaughan v. Atkinson*, 369 U.S. 527, 530–31, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). Although Sabow was ultimately successful in the present motions, given the lack of clarity in the case law applicable to both motions, the Court cannot say that ASC's actions in this case were taken without good cause. Sabow's request for attorney fees is DENIED.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Sabow's motion to dismiss (Dkt. No. 9) and motion to compel (Dkt. No. 10).

---

**6.** Based on Sabow's monthly rent of $775.00 during this period.