## BELLE PASS TOWING CORP.

v.

## Robert CHERAMIE.

### Civ. A. No. 90–2815.

United States District Court,
E.D. Louisiana.

April 22, 1991.

without a warrant.

Frank A. Piccolo, Charles M. Carr, III, Abbott, Best & Meeks, New Orleans, La., for plaintiff, Belle Pass Towing Corp.

Louis J. St. Martin, Estelle E. Mahoney, Houma, La., for defendant, Robert Cheramie.

## ORDER AND REASONS

MENTZ, District Judge.

This matter is before the Court on the motion of defendant, Robert Cheramie ("Cheramie"), to reconsider his motion to dismiss the plaintiff's complaint for declaratory judgment. After reviewing the motion, memoranda of counsel, the record and the law, the Court hereby grants the motion and exercises its discretion to dismiss this action for the reasons set forth below.

### Facts

This declaratory judgment was filed on August 3, 1990 by Robert Cheramie's employer, Belle Pass Towing Corporation ("Belle Pass"). In its complaint, Belle Pass stated that Cheramie was presently seeking medical care for an injury which allegedly occurred on or about May 30, 1989 and/or February 5, 1990, while in the service of the M/V LADY NEVA, a vessel owned and operated by Belle Pass. The complaint also asserted that Cheramie had sought and received maintenance and cure payments from Belle Pass in connection with the alleged accident(s). In addition, Belle Pass specifically denied that Cheramie's medical condition was caused by an accident or occurrence while in service of the M/V LADY NEVA, and further, Belle Pass denied any obligation to pay him maintenance and cure.

Belle Pass represented in its complaint that upon information and belief, Cheramie was being treated by a physician and that it was possible he would undergo invasive diagnostic testing and back surgery for four ruptured discs. Belle Pass requested various forms of relief including: (1) that a physician of its own choice review any diagnostic tests and examine Cheramie prior to any surgery to determine the necessity of any surgery and to determine the existence or nature of any medical condition that might be causally related to any accident he might have had while in the service of

the vessel; (2) an order declaring that Cheramie's prospective surgery and/or further medical treatment does not fall within Belle Pass's maintenance and cure obligations; (3) an order postponing any surgical procedure which would irrevocably alter Cheramie's condition until such time as Belle Pass is afforded the opportunity to have its physician examine Cheramie, perform diagnostic testing, and review any and all other testing that has already been done; and (4) an order requiring Cheramie to undergo an independent medical examination prior to any further orthopedic and/or surgical treatment. *See* Complaint, Record Document No. 1.

However, Cheramie had already undergone a cervical disc surgery on June 8, 1990, nearly two months prior to the filing of this declaratory judgment. Consequently, on September 7, 1990, Cheramie filed his answer, generally denying the pertinent portions of the Belle Pass complaint. On October 2, 1990, Cheramie filed his first motion to dismiss the declaratory judgment suit. In that motion, Cheramie argued that the Court should dismiss because Belle Pass, prior to filing its declaratory judgment action, had been on notice of a probable Jones Act suit by Cheramie in state court. Cheramie also argued that complete relief could be accorded in another forum, and that to allow the declaratory judgment suit to go forward would deprive him of his traditional choice of forum and timing. Finally, Cheramie argued that Belle Pass should not be allowed to use its declaratory judgment action as a tool to bifurcate this lawsuit, thereby reducing the amount of potential damages which might be awarded to him for his injuries.

By Minute Entry dated November 27, 1990, the Court denied Cheramie's motion to dismiss, finding that the issues involved in this case were virtually identical both legally and factually to the issues in the Court's prior opinion in *Torch, Inc. v. Theriot,* 727 F.Supp. 1048 (E.D.La.1990). The next month, on December 6, 1990, Cheramie filed suit in Texas state court.[1] No other state court action had been instituted prior to the Texas suit. All defendants in the Texas suit have been served and have answered, and all defendants are being represented by the same attorney who is representing Belle Pass in the present case.

Practically all the relief sought by Belle Pass in the declaratory judgment action is now moot. As noted previously, Cheramie had surgery prior to the filing of this suit. In addition, Cheramie has since had several independent medical examinations, two of which were not part of Belle Pass's requested relief, one with a psychiatrist and one with a urologist. Therefore, the only significant issue left to be determined is whether that surgery or any further surgery and/or medical treatment falls within Belle Pass's maintenance and cure obligations. Implicit in evaluating this issue are such questions as whether there was an accident(s), and whether Cheramie was injured while in the service of the vessel. Also inherent in any evaluation of these questions is a determination of causation aspects of the case that could necessarily impact any later state court case.

The issue in the present motion is whether the Court should dismiss Belle Pass's declaratory judgment action, and if so, whether such a dismissal can be reconciled with the Court's prior ruling in *Torch, Inc. v. Theriot.*[2] The Court concludes that this

1. Case No. E138046, 172nd Judicial District, Jefferson County, Texas. The suit seeks recovery under the Jones Act and General Maritime Law for damages for personal injuries allegedly sustained by Cheramie in two accidents, one on May 30, 1989 and another on February 5, 1990, while he was employed by Belle Pass on the M/V LADY NEVA. Belle Pass does not contest that this suit arises out of the same set of facts as its declaratory judgment action in this Court. In addition, Belle Pass does not argue that the maintenance and cure issues before this Court would not be resolved in the Texas state court

proceeding. In fact, it appears that the Texas state court could resolve all issues between the parties regarding Mr. Cheramie's alleged accident(s).

2. Cheramie does not challenge the notion that this type of maintenance and cure issue presents a requisite justiciable "controversy" for purposes of maintaining an action under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See Rowan Companies, Inc. v. Griffin,* 876 F.2d 26 (5th Cir.1989); *Torch, Inc. v. Theriot,* 727 F.Supp. 1048 (E.D.La.1990).

declaratory judgment action must be dismissed; however, the Court also notes that this result can be reconciled with *Torch* by limiting *Torch*. These limitations, as discussed below, involve a re-evaluation of *Torch* in light of the meaning and relative importance of the Saving to Suitors Clause, especially when analyzed in the context of the Declaratory Judgment Act. In addition, this re-evaluation turns on the potential preclusive effects of claim-splitting in maintenance and cure cases.

In *Torch*, the Court found the situation between plaintiff and defendant sufficiently analogous to that in *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26 (5th Cir.1989). In *Rowan*, the plaintiff sought a judicial declaration completely absolving it from future payments for maintenance and cure. In its declaratory judgment action, Torch sought an order absolving it from payment for Theriot's prospective surgery. *Torch*, 727 F.Supp. at 1050.[3] Both cases were evaluated in light of a number of factors as set forth in *Rowan*.[4] And, both cases noted that dismissals involving the Declaratory Judgment Act and dismissals involving the doctrine of *forum non conveniens* are based on many of the same considerations.[5] *Rowan*, 876 F.2d at 29; *Torch*, 727 F.Supp at 1051.

The defendant in *Torch* argued that two of the *Rowan* factors applied to his case: (1) that there was a pending state court proceeding in which the matters in controversy might be fully litigated; and (2) that the declaratory judgment suit was filed in anticipation of another suit and was being used for the purpose of forum shopping. *Id.* at 1050. Further, Theriot directed the Court to footnote 3 of the *Rowan* opinion in support of the proposition that a pending state court action should weigh heavily in the Court's decision whether to keep or dismiss the suit for declaratory relief. It reads in pertinent part:

> Subsequent to the district court's dismissal of Rowan's complaint for declaratory judgment relief, Griffin [the defendant-employee] filed a maintenance and cure suit against Rowan in Texas state court. This is an important factor that the district court should take into account.

*Id.* at 1051 (citing *Rowan*, 876 F.2d at 29, n. 3).[6]

The Court noted, however, that "important" as used in *Rowan* footnote 3 does not mean "dispositive." *Id.* The Court went on to discuss the other *Rowan* factors, finding that Torch had not rushed to the courthouse in order to prejudice Theriot's rights, and also finding that Torch had not brought its declaratory judgment action to forum shop. *Id.* The Court further found that under the principles of *forum non conveniens* this Court was probably the most convenient forum.[7]

---

**3.** The Court found this distinction made no difference. *Torch*, 727 F.Supp. at 1050.

**4.** The factors cited in *Rowan* for determining whether to dismiss a declaratory judgment action include: (1) the pendency of a state court proceeding in which the matters in controversy between the parties may be fully litigated; (2) indications that the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping; (3) the possible inequities in permitting the plaintiff to gain precedence in time and forum; and (4) because of inconvenience to the parties or witnesses. *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 29 (5th Cir.1989) (citations omitted).

**5.** *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir.1983).

**6.** In footnote 4 of the *Torch* opinion the Court also recognized that at the time of the hearing no state court suit had actually been filed:

> Counsel for Mr. Theriot admitted at oral argument that, contrary to the language of their memorandum, suit had not, at that time, been filed in the Texas state courts. He assured the Court, however, that such suit would soon be filed and the Court addresses this issue assuming, *arguendo*, that Mr. Theriot either has filed or soon will file such an action.

*Torch, Inc. v. Theriot*, 727 F.Supp. 1048, 1051, n. 4 (E.D.La.1990). However, for reasons stated in this opinion, the Court would now reach a different result had Mr. Theriot actually filed a state court action prior to filing his motion to dismiss the declaratory judgment action.

**7.** *Id.* at 1051 and n. 5. The Court noted that Theriot had not challenged Torch's virtual "laundry list" of connections between the declaratory judgment action and this forum.

Finally, Theriot argued that by refusing to dismiss the declaratory judgment, the Court would (1) deny him his right to a choice of forum; and (2) deny him his right to a jury trial on the maintenance and cure issue. *Id.* The right to a choice of forum, Theriot argued, is vested in the Saving to Suitors Clause.[8] In disagreeing with Theriot's argument the Court stated:

It is true that the Saving to Suitor[s] clause allows the plaintiff in an *in personam* admiralty suit the option of bringing his case in either the federal or state courts. The Court, however, has found no authority for extending this doctrine to preclude actions, either declaratory or otherwise, from being brought in the federal courts. While Mr. Theriot may under § 1333(a) seek remedy in either the state or federal systems, the statute neither mandates that Torch wait for Mr. Theriot to make this decision nor does it limit Torch to State courts when proceeding on its declaratory judgment action. Furthermore, the declaratory judgment action before this Court is limited to the issue of Torch's duty to pay for Mr. Theriot's proposed surgery. Mr. Theriot may still exercise the right granted him by the Saving to Suitor[s] clause and file his action in a state court.

*Id.* Turning to Theriot's claim that maintaining the declaratory judgment action would deny him the right to a jury trial, Theriot directed the Court again to footnote 3 of the *Rowan* opinion, which states in pertinent part:

[I]n an appropriate setting it may be significant that a maintenance and cure claim joined with a Jones Act claim must be submitted to a jury when both arise out of one set of facts.

*Rowan,* 876 F.2d at 29, n. 3 (citing *Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963)).

Discussing *Fitzgerald* in *Torch,* the Court noted that *Fitzgerald* dealt with the practice of some district courts at that time, involving cases where they were presented with separate claims for Jones Act remedies, unseaworthiness, and maintenance and cure, all arising out of the same set of facts. These district courts would allow the Jones Act and unseaworthiness claims to be tried to a jury and then would try the maintenance and cure claim separately to the bench. *Torch,* 727 F.Supp. at 1052.[9] The *Fitzgerald* court noted its congressionally delegated responsibility for fashioning rules of admiralty law and held that a maintenance and cure claim joined with a Jones Act claim must be submitted to the jury when both arise out of one set of facts. *Fitzgerald v. United States Lines Company,* 374 U.S. 16, 21, 83 S.Ct. 1646, 1650–51, 10 L.Ed.2d 720 (1963).

However, in *Torch* we ruled that the situation addressed in *Fitzgerald* differed materially from the situation presented in *Torch.* There was no Jones Act claim joined with the maintenance and cure claim in *Torch.* In addition, the *Fitzgerald* decision did not involve either the Declaratory Judgment Act or the narrow issue presented in *Torch,* namely, the propriety of Theriot undergoing surgery. The Court ruled that the concerns addressed in *Fitzgerald* were not applicable given the context. *See Torch,* 727 F.Supp. at 1052. Furthermore, the Court found that Theriot could avoid any potential prejudice involving his Jones Act claims by joining them with the declaratory judgment action. *Id.* Finally, in denying the motion to dismiss the Court held that "neither the pendency of a suit in the state courts of Texas nor the consequential isolation of this issue from a Texas jury compels or warrants the dismissal of Torch, Inc.'s declaratory judgment action." *Id.*

---

**8.** 28 U.S.C. § 1333, which reads in pertinent part:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

**9.** Writing for the majority, Justice Black described this method of dividing lawsuits for trial "so cumbersome, confusing, and time consuming that it places completely unnecessary obstacles in the paths of litigants seeking justice in our courts...." *Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 21, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963).

### Analysis

 To restate the issue, the Court must decide whether to dismiss Belle Pass's declaratory judgment action in light of Cheramie's pending state court action in Texas. And, because we believe that dismissal is appropriate,[10] the Court must also determine whether it is possible to reconcile this result with *Torch.*

The proper starting point is the *Rowan* opinion, particularly footnote 3 of that opinion. Interpreting *Fitzgerald,* the *Rowan* court stated that *"in an appropriate setting* it may be significant that a maintenance and cure claim joined with a Jones Act claim must be submitted to a jury when both arise out of one set of facts." *Rowan,* 876 F.2d at 29, n. 3 (emphasis added). It is noteworthy that the *Rowan* case involved a declaratory judgment action on a maintenance and cure issue, and that subsequent to the filing of the declaratory judgment, Griffin, the defendant-employee, filed a state court seaman's suit. So, in the first instance the Court's attempt in *Torch* to distinguish *Fitzgerald* because *Fitzgerald* did not involve either a declaratory judgment or a parallel suit filed in state court is incorrect. *Rowan* does not recognize this distinction and, as previously stated, we found the facts in *Torch* and *Rowan* to be sufficiently analogous. *Torch,* 727 F.Supp. at 1050. Second, and more important, is the emphasized language "in an appropriate setting," quoted

from the *Rowan* opinion. This language begs the question: What could be an appropriate setting?

The Court finds that there are three settings which might, depending on further analysis, be "appropriate." In all three situations a declaratory judgment action has been filed, followed thereafter by the defendant's motion to dismiss. All three turn on the existence, or lack thereof, of a parallel state court suit. And, it is important to note that in deciding whether to entertain a declaratory judgment action in the context of a parallel state court suit, the Fifth Circuit has held that such a situation is properly evaluated under the *Rowan* factors, and *not* under the factors enumerated in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[11]

The first type of situation occurs when a declaratory judgment action based on the same set of facts is filed after a plaintiff in a state court suit has filed his state court petition. The second scenario is best illustrated by *Rowan.* Subsequent to filing a declaratory judgment action, the defendant in the declaratory judgment case properly files a state court suit based on the same set of facts.[12] The third type of situation is best illustrated by *Torch.* It also involves

---

10. *Accord Otis Engineering Corp. v. Harris,* No. 91–0571, 1991 WL 42578 (E.D.La. March 28, 1991) (Sear, J.); *Rowan Companies, Inc. v. Blanton,* No. 90–2479 (E.D.La. February 5, 1991) (Feldman, J.); *Monteiro Towing Co., Inc. v. Guidry,* No. 89–4418, 1989 WL 159336 (E.D.La. December 21, 1989) (Duplantier, J.); and *Odeco, Inc. v. Fortenberry,* No. 89–3085, 1989 WL 152707 (E.D.La. December 13, 1989) (Livaudais, J.).

11. These cases involved permissive abstention by a federal court in favor of parallel state court litigation. Two panels of the Fifth Circuit have rejected application of the *Cone* and *Colorado River* factors to cases involving a decision whether to dismiss a declaratory judgment action. *Rowan,* 876 F.2d at 29 n. 2; *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 601 n. 1 (5th Cir.1983). The Fifth Circuit has characterized its only decision to apply the *Cone–Colorado River* factors in a declaratory

judgment action, *Evanston Ins. Co. v. Jimco, Inc.,* 844 F.2d 1185 (5th Cir.1983), as "inadvertently overlook[ing]" the prior decision in *Puritan Fashions. Rowan,* 876 F.2d at 29 n. 2.

12. Actually, in *Rowan,* the plaintiff did not file his state court suit until after the district court had dismissed on *forum non conveniens* grounds. In the appellate opinion remanding the case, the Fifth Circuit noted that Griffin had filed a state court suit during the pendency of the appeal. The court remanded for a determination of the appropriateness of maintaining the declaratory judgment action and stated that the state court suit was an important factor the district court should consider in that regard. *Rowan,* 876 F.2d at 29, n. 3. This distinction, however, is unimportant for purposes of the illustrating the second type of setting. On remand it became a declaratory action where a subsequent state court suit had been filed.

a declaratory judgment action and consideration of a motion to dismiss, but where there is no pending state court suit.

The Court believes that, contrary to our earlier finding in *Torch*, the threshold consideration in a motion to dismiss a declaratory judgment action like the present one must be whether a state court suit based on the same facts has been properly filed. We believe now that such a determination may be dispositive because the Saving to Suitors Clause preserves certain rights to maritime plaintiffs. We stated in *Torch* that we had "not found any authority for extending the Saving to Suitors Clause to preclude actions, declaratory or otherwise, from being brought in the federal courts." *Id.* at 1051. However, the Court recognizes that the authority for that proposition exists in the Saving to Suitors Clause itself, implicitly recognized in *Fitzgerald* and footnote 3 of *Rowan*.[13] The "appropriate setting" in which a maintenance and cure claim and a Jones Act claim arising out of the same facts must be submitted to a jury turns on whether the declaratory judgment defendant has chosen to exercise his Saving to Suitors rights by properly filing such an action in state court.[14] Only after such a determination is it appropriate to look at the other *Rowan* factors.

In *Torch*, as in the present case, the declaratory judgment defendant argued

that the Saving to Suitors Clause is intended to preserve his choice of forum and timing, as well as his right to have both the Jones Act and maintenance and cure claims submitted to a jury. However, the Saving to Suitors Clause is intended to preserve common law *remedies*[15], not to guarantee a plaintiff a particular forum.[16] *See Fogleman v. Tidewater Barges, Inc.*, 747 F.Supp. 348, 355 (E.D.La.1990) (citing *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir. Unit A June 1981)).[17] Since the common law is competent in all *in personam* suits, a Jones Act action combined with an *in personam* maintenance and cure action is remedial in nature and properly the subject of a Saving to Suitors invocation. *See Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). Furthermore, most courts and commentators recognize that the right to a jury trial, if available at common law, is also preserved under the Saving to Suitors Clause. *See e.g.*, Schoenbaum, *Admiralty and Maritime Law*, § 3–13 at p. 118, § 5–2 at pp. 160–61 and n. 13 (citing *Fitzgerald v. United States Lines Company*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963)).

Another consideration involving a declaratory judgment action and the pendency of a state court suit is the possible preclusive effects that findings in the declaratory judgment suit would have on the pending

**13.** The Saving to Suitors Clause does not preclude *filing* the declaratory judgment action. It may, however, preclude the court from keeping such an action once a motion to dismiss based on a pending state court action has been urged.

**14.** Or, for that matter, in federal court. A declaratory judgment action and a Jones Act suit filed in the same district under different civil action numbers may simply be consolidated. However, when a Jones Act plaintiff has filed in another district, his election to pursue his remedies in that forum should be honored for the same reasons as when a Jones Act suit is filed in state court. *See Fitzgerald*, 374 U.S. at 21, 83 S.Ct. at 1650–51. Of course, the requirements for venue and personal jurisdiction must be satisfied in that district.

**15.** The common law remedy is available "in all cases where the common law is competent to give it." Schoenbaum, *Admiralty and Maritime Law*, § 3–13 at p. 116 (West 1987 & Supp.1989)

(citing *Leon v. Galceran*, 78 U.S. (11 Wall.) 185, 191, 20 L.Ed. 74 (1871)). Common law is competent in all cases where the suit is *in personam*. *See id.*

**16.** The Court also believes that timing is not remedial and, therefore, that the Saving to Suitors Clause is not intended to preserve any choice of *when* to file suit. *See Torch*, 727 F.Supp. at 1051.

**17.** This is especially true in removal cases where it is possible to preserve the common law remedy and the jury trial but the defendant is still able to remove on the basis of diversity jurisdiction. Diversity is not covered by to 28 U.S.C. § 1333 since it is non-maritime in character. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3674, p. 466 (1985 & Supp.1991). However, the only possible basis of jurisdiction in the present maintenance and cure declaratory judgment case *is* admiralty; therefore, the Savings to Suitors Clause applies.

state court suit.[18] In *Torch*, one of the justifications listed for not dismissing the declaratory judgment action was that "it was limited to the issue of Torch's duty to pay for Mr. Theriot's proposed surgery." But in *Torch* there was no pending state court case. In the present case, Belle Pass also seeks to have the Court determine its duty to pay. However, we realize now that this issue necessarily involves a factual resolution of whether there was an accident and whether the accident occurred while Cheramie was in the service of the vessel. Obviously, these matters would also be important to a defendant-employee who has filed a Jones Act suit in another court. In fact, resolution of these matters by this Court might have preclusive effects on Cheramie's Texas state court Jones Act action. If, for example, in the declaratory judgment trial we were to determine that there was no accident or that the accident occurred while the Cheramie was not in the service of the vessel, these findings might be *res judicata* in the Texas court Jones Act case and Cheramie would have lost his right to have the state court jury determine these facts. In addition, if we were to determine that any of Cheramie's medical conditions were not related to his accident, or that some medical treatments already performed were not related to his accident, he might be collaterally estopped from relitigating these issues in his Jones Act suit. Therefore, in addition to the Saving to Suitors considerations discussed above, the Court believes that the "appropriate setting" language in the *Rowan* footnote 3 also implicitly cautions against eliminating a suitor's rights through preclusion when the subject of the declaratory judgment action—the maintenance and cure claim—

arises out of the same set of facts as his Jones Act suit.[19]

Returning to the three potentially "appropriate settings" discussed above, we find that two are "appropriate" as a matter of law. Those two situations involve the pendency of a Jones Act suit based on the same facts—one when suit is filed before the institution of a declaratory judgment action, the other when suit is filed subsequent to institution of such an action but before the hearing on a motion to dismiss. We believe that absent bad faith on the part of the defendant-employee in the federal court, a properly filed Jones Act suit *requires* dismissal of a declaratory judgment action which arises out of the same set of facts. As described above, this result is mandated because of the nature of the Saving to Suitors Clause, and because of the possible preclusive effects maintaining such an action would have on a suitor's Jones Act case in another court.

However, dismissal is not required when there is no pending Jones Act suit. *Torch* presented exactly this type of situation. At the time *Torch* was argued and decided, Mr. Theriot had not filed a Jones Act suit. *Torch*, 727 F.Supp. at 1051 n. 4. The note reads:

> Counsel for Mr. Theriot admitted at oral argument that, contrary to the language of their memorandum, suit had not, at that time, been filed in the Texas state courts. He assured the Court, however, that such suit would soon be filed and the Court addresses this issue assuming, *arguendo* that Mr. Theriot either has filed or soon will file such an action.[20]

---

**18.** As one commentator has stated:
> [C]ourts ... will not permit the declaratory remedy to be used merely for the purpose of procedural fencing, or to provide an arena for a race for res judicata.

6A Moore's Federal Practice ¶ 57.08(2), at pp. 57–38 and 57–39 (2d ed. 1991).

**19.** The Court uses the term "Jones Act suit" because the issues discussed in the present case arose in that context. However, the Saving to Suitors Clause pertains to *in personam* admiralty claims. For that reason, we note that our use

of the term "Jones Act suit" in this context may be used interchangeably with the term "*in personam* admiralty claims."

**20.** The first sentence in footnote 4 of *Torch* illustrates the point, namely, that the situation in *Torch* falls into the category where there is no pending *in personam* admiralty action by a suitor in another court. We note, however, that the second sentence of footnote 4 above was surplusage at the time *Torch* was decided and not necessary to the opinion.

In considering a motion to dismiss a declaratory judgment action in a situation like *Torch,* a court has no reasonable way to determine when and if a Jones Act suit will be filed. Indeed, because no parallel suit would have been filed in such a case, deciding whether to preserve a suitor's remedies or avoid unjust preclusion would not even be before the court. In this regard, it would be pure speculation for a court to rule on issues which may or may not arise. Furthermore, in a situation like *Torch* the court would not have the benefit of determining from the state court pleadings whether the two parallel suits actually do arise out of one set of facts.

Therefore, the Court does not overrule *Torch;* rather, we limit *Torch* to its facts. Since there was no pending Jones Act suit, the Court could and did properly consider the other *Rowan* factors, such as the impact of the doctrine of *forum non conveniens,* and whether Torch's actions amounted to racing to the courthouse or forum shopping. In so doing, the Court concluded that these factors warranted maintaining the declaratory judgment action. Therefore, even though the Court did not consider the consequences a pending Jones Act suit might have had on the case, the result reached in *Torch* was proper.

Furthermore, in *Torch* the Court stated that nothing in 28 U.S.C. § 1333(a) mandates that an employer wait until an employee has decided if, where, and when to file suit before instituting a declaratory judgment action. *Torch,* 727 F.Supp. at 1051. We believe this conclusion is also still correct. In the two types of settings involving pending Jones Act cases, *i.e.,* filed either before or after the declaratory judgment action, § 1333(a) simply requires that the declaratory judgment case be dismissed. On the other hand, the *Torch* type of setting is not addressed by § 1333(a). Also, preclusion is not an issue in a *Torch* type of setting. The defendant-employee need only properly file a Jones Act suit followed by a motion to dismiss the declaratory judgment action in order to eliminate the potentially preclusive effects of the declaratory judgment action. In addition, we believe this approach does not encourage forum shopping by employers like Belle Pass; rather, it encourages a speedy determination of rights and liabilities.

Accordingly,

IT IS ORDERED that Robert Cheramie's motion to reconsider his motion to dismiss this declaratory judgment action is GRANTED, and Belle Pass Towing Corporation's complaint is DISMISSED WITH PREJUDICE, each party to bear its own costs.