**LADY DEBORAH, INC., Plaintiff,**

v.

**Eugene WARE, Defendant.**

**Civ. A. No. 2:93cv1093.**

United States District Court,
E.D. Virginia,
Norfolk Division.

June 6, 1994.

John Early Holloway, Andrew Jackson Timms, Hunton & Williams, Norfolk, VA, for plaintiff.

Jesse Marden Suit, III, Rutter & Montagna, Norfolk, VA, for defendant.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter is before this Court on defendant's objections to the Magistrate's Report and Recommendation filed April 22, 1994. Pursuant to 28 U.S.C. § 636(b)(1)(C), this court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Because the defendant objects to all aspects of the magistrate's decision, this Court will consider the issues *de novo*.

### I. Facts and Procedural History

Defendant, Eugene Ware, was a crew member aboard the fishing vessel LADY DEBORAH. Ware alleges, in a separate state suit, that he was injured while aboard the LADY DEBORAH on April 26, 1993. As a result of this alleged injury, Ware originally filed a suit in Norfolk Circuit Court against Davis Boat Works where the vessel was drydocked, claiming that Davis Boat Works was the owner of the LADY DEBORAH. This action was later non-suited.

In October, Ware approached the proper owners of the vessel, Lady Deborah, Inc., with a claim for maintenance and cure. At that time, counsel for Lady Deborah investigated Ware's claim and found no evidence that Ware had injured himself while aboard the vessel. As counsel for Lady Deborah describes it, this put the company into a dilemma. Either it could pay the maintenance and cure claim to Ware, or it could risk mounting attorneys' fees and consequential damages while awaiting Ware's eventual suit for maintenance and cure.[1]

In order to "escape" this dilemma, Lady Deborah sought a declaratory judgment of its liability in federal court. Accordingly, on November 9, 1993, Lady Deborah filed a complaint for declaratory judgment pursuant

---

1. The general maritime law provides seamen the maintenance and cure remedy. The law protects seamen and penalizes parties who refuse to pay maintenance and cure claims by awarding attor- neys' fees, consequential damages, and punitive damages to seaman forced to bring their claims to court.

to 28 U.S.C. § 2201. However, shortly after receiving service of this complaint, Ware filed a new state court action alleging maintenance and cure, unseaworthiness, and Jones Act claims against Lady Deborah. Then, on January 26, 1994, Ware filed this motion to dismiss the complaint for declaratory judgment.

## II. Analysis

■ The Declaratory Judgment Act provides:

> In a case or controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Before issuing a declaratory judgment, a district court must find that there is a case or controversy and then must find that declaratory relief is appropriate. *White v. National Union Fire Ins. Co.,* 913 F.2d 165, 167 (4th Cir.1990). Clearly, an injured seaman's claim against the shipowner for maintenance and cure is a case or controversy within the jurisdiction of this Court. The question before this Court then, is whether it should exercise its discretion to decline to entertain a declaratory judgment because of pending litigation on the same matter in state courts. *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371 (4th Cir.1994).

> ■As the Fourth Circuit recently stated: It has long been settled that a federal court has some measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction. This discretion is not unbounded, however: a district court may not refuse to entertain a declaratory judgment out of "whim or personal disinclination," but may do so only for "good reason."

*Nautilus,* 15 F.3d at 375 (citations omitted). Accordingly, the district court should normally entertain such a motion where doing so

will serve a useful purpose in clarifying the issues and will terminate and afford relief from the controversy giving rise to the proceedings. *White,* 913 F.2d at 168; *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 324–25 (4th Cir.1937).

■ However, when there is pending state litigation concerning the same controversy, the Fourth Circuit has directed the district courts to weigh four additional factors. First, the court should weigh the state's interest in deciding the issues raised by the declaratory judgment action. Second, the court should evaluate whether the controversy would be more efficiently resolved in the pending state proceeding. Third, the court should consider whether proceeding with the declaratory judgment would unnecessarily entangle the state and federal systems because of overlapping factual and legal issues. Finally, the court should consider whether the declaratory judgment action is being used merely as a device for procedural fencing. *Nautilus,* 15 F.3d at 376–77 (citing *Mitcheson v. Harris,* 955 F.2d 235, 237–41 (4th Cir.1992)). These factors are designed to ensure that the district court exercises its discretion according to the guiding principles of federalism, comity, and efficiency. *Nautilus,* 15 F.3d at 377.

■ While the Fourth Circuit provides this general guidance, research revealed no opinions from the circuit or district courts of the Fourth Circuit specifically on declaratory judgments in the context of an action for maintenance and cure. This context provides its own unique tensions. On the one hand, the employer has a legitimate interest in resolving the issue as quickly as possible. In addition to the usual pressures, maintenance and cure claims provide for consequential and punitive damages if the claims are wrongly refused. However, the employer may also be motivated by a desire to get a federal forum for a case that might typically be heard in the state courts and would not be removable if it were filed there first. Thus, by racing to the courthouse to file a declaratory judgment action, the employer may simply be forum shopping. On the other side of the equation, the seaman typically has the

ability to choose the forum for his complaint if the maintenance and cure action is combined with other related causes of action. While it would appear that the seaman has a relatively equal incentive to file his suit, he may be more interested in threatening the employer with suit and building his medical case by visiting doctors recommended by his lawyer than he is in actually having an adjudication of the merits. The different incentives facing the parties is very different, than, for instance, the incentives faced by a group of insurers trying to determine who has the responsibility to defend an action against a party insured by each of them. Hence, the factual application of these doctrines changes with different contexts.

Despite the lack of Fourth Circuit authority, the Fifth Circuit has specifically considered the issue of declaratory judgments in the context of employers' suits to determine their maintenance and cure liability. In *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26 (5th Cir.1989), the Fifth Circuit interpreted the principles of federalism, comity, and efficiency in this context. The *Griffin* court arrived at similar but slightly more pointed criteria for determining when a district court should refuse to exercise its declaratory judgment jurisdiction: 1) whether there was a pending state court proceeding that would result in the full litigation of the controversy, 2) whether the declaratory judgment complaint was filed in anticipation of litigation and is being used for forum shopping, 3) the possible inequities of permitting plaintiff to gain precedence in time and forum, and 4) the inconvenience to the parties and witnesses. *Griffin*, 876 F.2d at 29. Applying these factors, the Fifth Circuit concluded that where a state suit is pending which encompasses the maintenance and cure claim and where that state suit has been joined with a Jones Act claim, the district court should decline to hear the declaratory judgment action. *Griffin*, 876 F.2d at 28–29 and 29 n. 3.

In a series of published and unpublished cases following *Griffin*, the Eastern District of Louisiana has returned to this question on several occasions. In the most extensive analysis of the issue, the court in *Belle Pass Towing Corp. v. Cheramie*, 763 F.Supp. 1348

(E.D.La.1991) laid out the three possible scenarios in which this issue could arise. In the clearest of all possible cases, the seaman files his state suit first and then the employer files a declaratory judgment in federal court. *Belle Pass Towing*, 763 F.Supp. at 1353–54. In most cases, this could only be seen as an attempt to remove an otherwise unremovable case and the district court should refuse to hear the matter.

In *Belle Pass Towing*'s third scenario, an employer files a declaratory judgment suit and the seaman responds with a motion to dismiss, but has not yet filed any other action to resolve the merits of the case. *Belle Pass Towing*, 763 F.Supp. at 1354. In this case, the district court will usually hear the declaratory judgment motion because in the absence of any pending litigation on the matter, this will be the only method of resolving the employer's liability. *Belle Pass Towing*, 763 F.Supp. at 1354 (limiting the holding of *Torch, Inc. v. Theriot*, 727 F.Supp. 1048 (E.D.La.1990) to these facts).

The final scenario—the second in *Belle Pass Towing*'s chronological account—is both the most common and the most difficult. In this scenario, the employer—obviously aware of a potential claim against it and perhaps aware of an impending suit—files a declaratory judgment action. Sometime after the employer files the declaratory judgment action, the seaman files his suit in state court and a motion to dismiss the federal declaratory action. Typically, the seaman's state court suit will include Jones Act claims and/or *in personam* general maritime claims neither of which would normally be removable.

In several cases in the Eastern District of Louisiana, the courts have agreed that such cases must proceed in state court. The *Belle Pass Towing* court concluded that the filing of a state court suit at any time is dispositive of the issue: "absent bad faith on the part of the defendant-employee [seaman] in the federal court, a properly filed Jones Act suit [or an *in personam* general maritime claim] *requires* dismissal of a declaratory judgment action which arises out of the same set of facts." 763 F.Supp. at 1355 & 1355 n. 113 (emphasis in the original). *See also Rowan*

*Companies, Inc. v. Blanton,* 764 F.Supp. 1090 (E.D.La.1992); *Monica Lynn, Inc. v. Collier,* No. 92–2773, 1993 WL 35163, 1993 U.S.Dist. LEXIS 1634 (E.D.La. Feb. 11, 1993); *Doucet & Adams, Inc. v. Adams,* No. 91–3877, 1992 WL 178704, 1992 U.S.Dist. LEXIS 11246 (E.D.La. July 21, 1992); *ODE-CO Oil & Gas Co. v. James,* No. 92–0700, 1992 WL 92067, 1992 U.S.Dist. LEXIS 5383 (E.D.La. April 15, 1992); *Monteiro Towing Co. v. Guidry,* No. 89–4418, 1989 WL 159336, 1989 U.S.Dist. LEXIS 15555 (E.D.La. Dec. 21, 1989).

The policy reasons for this position are significant. Perhaps the most important policy driving these decisions is the tradition of preserving plaintiffs' ability to choose their remedy. The saving to suitors clause of 28 U.S.C. § 1333 provides that a plaintiff with a general maritime cause of action may choose to proceed in state court with a jury or in federal court. Similarly, the Supreme Court, under its authority to shape the rules of admiralty law, has held that where a maintenance and cure claim is joined with Jones Act and unseaworthiness claims, the plaintiff should be allowed to try all of the claims together to a jury. *Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Thus, to allow employers to defeat plaintiffs' choice of remedy by rushing to the courthouse to file a declaratory judgment actions would in many cases undermine both the saving to suitors clause and *Fitzgerald. Blanton,* 764 F.Supp. at 1092 (E.D.La.1991). Note, however, that a federal declaratory judgment does not necessarily defeat a plaintiff's remedy of a jury trial even if it does defeat a choice of forum. In some instances, the seaman will be able to file a counterclaim in federal court asserting Jones Act and negligence claims and receive the benefit of a federal jury. *First Shipmor Associates v. Musa,* 1993 A.M.C. 2007, 1993 WL 181382 (C.D.Cal.1993).

The same concerns about efficiency, comity, and federalism which drove the *Fitzgerald* decision are also present here. Where a seaman has a pending state suit combining maintenance and cure claims with other related claims arising out of the same incident, the trial of the declaratory judgment action in federal court will require production of entirely duplicative evidence and witnesses. Furthermore, if the declaratory judgment were tried, the resulting partial adjudication of the issues would require a potentially complicated application of the doctrines of res judicata and collateral estoppel. As the *Fitzgerald* court concluded, "Only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments." 374 U.S. at 19, 83 S.Ct. at 1650; *Blanton,* 764 F.Supp. at 1092 ("The purpose of 28 U.S.C. § 2201 [the Declaratory Judgment Act] is not served by trying a case piecemeal.").

These cases from the Eastern District of Louisiana and the policies which drive them indicate that in most instances, a federal court should refuse to entertain a declaratory judgment action when the seaman subsequently files a state court action arising from the same set of facts but combining other claims with the maintenance and cure claim. This Court would not go as far as the *Belle Pass Towing* court in holding that a dismissal is necessarily required under these circumstances. As the *Griffin* court stated, after the weighing of all of the relevant factors, the decision to hear or dismiss a declaratory judgment action remains in the discretion of the district court. 876 F.2d at 29.[2] Arguably, the *Belle Pass Towing* court accounts for this discretion by refusing to dismiss cases involving "bad faith on the part of the defendant-employee [seaman] in the federal court." 763 F.Supp. at 1355. Indeed, many of the conceivable reasons for refusing to dismiss a declaratory judgment action could be cast as "bad faith" on the part of the seaman. For example, a California district court explicitly disagreed with *Belle Pass Towing* when it refused to dismiss a declaratory judgment action before it. *First Shipmor,* 1993 A.M.C. at 2009, 1993 WL 181382. But that court could have just as simply fit its facts into the bad faith exception. *Id.*

---

2. Despite this decision being in the discretion of the district court, the Fourth Circuit recently stated that its review of the district court's dis-cretion amounts to *de novo* review. *Nautilus,* 15 F.3d at 375.

However, the *First Shipmor* court also noted that, because the employer had already admitted that the seaman's injury was a result of his service on the vessel, the problems of preclusion were not as significant. 1993 A.M.C. at 2010, 1993 WL 181382. Thus, *First Shipmor* illustrates that district courts must continue to exercise their discretion based on the facts presented and that no strict rule, as advocated by *Belle Pass Towing*, will suffice to resolve the inherent tension between the seaman and the employer's rights raised by these actions.

The facts of the case before us demonstrate how the district courts must carefully weigh the particular facts of the case before it rather than relying on rigid rules. In the seaman's favor, the employer was well aware of his claim and the likelihood of a state court action. The litigation which is now pending does cover a broader range of claims arising out of the same set of facts and, unlike *Shipmor*, the federal declaratory judgment action would have a very significant preclusive effect on that action. Furthermore, but for some confusion about who the appropriate party to sue was, the seaman might have filed this suit before the employer even filed this declaratory judgment as his first suit against Davis Boatworks was filed several months before the declaratory judgment action. Finally, just as the *Shipmor* court suggested that seamen might counterclaim in federal court to preserve their right to a jury, so too could an employer file a similar declaratory judgment action in Virginia state court to escape the horns of this dilemma. Va.Code § 8.01–184.[3]

In the employer's favor,[4] the seaman's attorney told the magistrate at oral argument that his reason for not filing a counterclaim in federal court was that he preferred the state court's slower docket, and that the slower docket would allow the seaman to better prepare his medical case. Furthermore, the employer has brought to the Court's attention an allegation, supported by an affidavit, that the seaman in this case has offered to pay witnesses for testifying favorably in his case. While the Court is not in a position to comment on the merits of this case at this time, such facts suggest the possibility of litigation as a means unto itself rather than its appropriate purpose of resolving a dispute. In an age of expanding litigation and medical experts for hire, this Court is increasingly wary of suits filed more for their nuisance settlement value than for their legitimate factual basis.

In the final analysis, however, this Court cannot say that the seaman is attempting to unduly delay the litigation, nor can it say for certain that the employer is not engaging in some procedural fencing in order to seek a federal forum for what would otherwise be a nonremovable case. These are essentially questions of intent and the circumstantial evidence thereof can be plausibly interpreted in either direction.

Given this uncertainty, this Court believes that it should avoid unnecessary entanglement with the state court proceeding. However, in order to preserve the employer's legitimate right to a timely resolution of this issue, rather than dismissing this declaratory judgment outright, the Court hereby STAYS this action for six months from the date of

---

**3.** Of course, because a maintenance and cure claim, in the absence of a Jones Act or unseaworthiness claim is a purely federal claim, it might seem more natural for to file a declaratory judgment action in federal court. As a matter of practice, however, because of the history of dividing up admiralty claims into various different categories, almost all maintenance and cure claims of this sort are joined by related claims. Thus, there is no non-strategic reason why an employer could not seek a declaratory judgment on any and all possible claims arising out of an alleged injury in state court.

**4.** Employer also offers as a reason for this Court to retain jurisdiction the fact that this case may turn in part on the interpretation of a federal

statute. The statute requires seamen to report their injuries to their master within seven days of the injury. 46 U.S.C. 10603(a). This statute has not been the subject of any reported federal or state litigation. However, this is not necessarily a reason for a federal court to decide the issue. State courts are often called on to interpret federal statutes in the course of litigation, just as federal courts often must interpret and follow state law. Especially in the area of admiralty law, the state and federal courts have significant shared responsibilities in interpreting and developing the law. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 373–74, 79 S.Ct. 468, 480–81, 3 L.Ed.2d 368 (1959).

this order. This Court is well aware of the speedy docket in the state court in question.

### III. Conclusion

For the foregoing reasons, this action is STAYED for six months from the date of this order.

If the state court has not resolved this matter within the six month time period, the plaintiff-employer may move this Court to again consider its declaratory judgment action. This Court—aware that the discovery and other procedures in the state system parallel the federal system—may set this case down for trial within several weeks of such motion.

If the state court does resolve this matter within that time frame, the Court DIRECTS plaintiff to inform this Court and this matter will then be dismissed from the docket.

The Clerk of the Court is DIRECTED to forward copies of this order to counsel for the parties.

IT IS SO ORDERED.